# Third District Court of Appeal

## State of Florida

Opinion filed March 12, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1368
Lower Tribunal No. 19-0460-P
_____

**Monroe County, Florida, etc.,**
Appellant,

vs.

**Sunset Gardens Estate Land
Trust 2/10/2014, etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Monroe County, Timothy J. Koenig, Judge.

Peter H. Morris, Assistant County Attorney, for appellant.

Hershoff, Lupino & Yagel, LLP, and Matthew O. Hutchinson, for appellees.

Before FERNANDEZ, LINDSEY, and MILLER, JJ.

LINDSEY, J.

Appellant Monroe County appeals from a Final Declaratory Judgment

entered in favor of Appellee Sunset Gardens Estate Land Trust, following

cross-motions for summary judgment. Sunset operates a farm on its property (the Florida Keys Farm) and sought a declaration as to whether state law preempts County regulation of various agricultural uses of the property (Count I). Sunset also sought a declaration as to the legality of a daily $200 fine imposed for land clearing (Count II). The trial court entered judgment in favor of Sunset on both counts. For the reasons set forth below, we partially affirm and partially reverse.

## I. BACKGROUND

The following facts are undisputed. In February 2014, Sunset acquired the subject property, which the County had designated as Tier I environmentally sensitive land.[1] In September 2017, County Code Enforcement began investigating illegal development of the property, and the next month, it issued a Stop Work Order due to ongoing land clearing without a permit. At this time, the property was classified as "residential vacant." In January 2018, Sunset filed an Application for Agricultural Classification with the Property Appraiser. This Application was approved in April 2018.

In October 2018, the County issued Sunset a Notice of Violation for failure to obtain permits for beekeeping and land clearing. The Violation required Sunset to obtain a permit to restore the property in a manner approved by the County Biologist. In January 2019, the parties entered into

---

[1] Under the County's tier system, Tier I is the most environmentally sensitive and the highest protected category.

2

a Stipulation Agreement. Pursuant to the Stipulation, Sunset agreed to follow a detailed Restoration and Replanting Plan prepared by the County Biologist. Nothing in the Stipulation required Sunset to obtain a permit before following the Restoration Plan.

After a hearing, a magistrate entered a Final Order incorporating both the Notice of Violation and the Stipulation. The Order required Sunset to follow and complete the County Biologist's Restoration Plan by June 2019. Failure to comply would result in a $200 per day fine. None of the conditions in the Order required Sunset to obtain a permit before following the Restoration Plan.

According to Jonathan Simpson, Sunset's Trustee, Sunset complied with the Restoration Plan before the deadline and contacted the County for reinspection. However, the County refused to complete the inspection because Sunset failed to obtain a permit before following the Restoration Plan. In July 2019, after the deadline for compliance had passed, the County sent Sunset a letter informing it that unspecified violations remained on the property and that fines of $200 per day would be imposed until the property comes into compliance.

In September 2019, Sunset filed the underlying declaratory judgment action. In its operative two-count Complaint, Sunset sought a declaration as to the County's ability to regulate the agricultural uses of the farm— regulations Sunset contends are preempted by State law. More specifically,

3

Sunset broadly alleged that various State statutes preempt "local laws, ordinances, and code regulations related to the prohibition of agricultural purposes, uses, operations or activities." Sunset did not identify which local regulations were preempted. Sunset also sought a declaration that it complied with the Stipulation and that the $200 per day fine was therefore unlawful.

In August 2022, the parties participated in mediation, and Sunset agreed to apply for a Letter of Understanding. In its application, Sunset explained that it intended to use the property for a variety of agricultural and agrotourism uses, including: "beekeeping, growing pineapples and other nursery plants, raising goats for milk production, chickens for egg production, processing goat milk soap, operating a farm market, hosting farm tours, farm winery, and hosting weddings and other events." Sunset also referenced several state laws that it claimed preempted local regulation of the intended uses.

The County issued a 33-page Letter of Understanding providing "a review of the current provisions of the Monroe County Comprehensive Plan and Land Development Code . . . that would generally apply to the proposed use and development on the subject property." The Letter set forth dozens of local regulations. However, the Letter expressly made no determination as to whether any State laws preempted local regulation of the property.

4

The County also filed a three-count Counterclaim seeking (I) a declaration that over 35 local land development regulations are not preempted by State law; (II) injunctive relief prohibiting further land clearing and development; and (III) declaratory relief as to the enforcement of the $200 per day fine.

Shortly after the County filed its Counterclaim, Sunset moved for summary judgment. Sunset argued that local regulation of the agricultural uses of the land was preempted by State law. Sunset also argued that the County breached the Stipulation and therefore was not entitled to collect the $200 per day fine. In response, the County agreed that the case should be decided on summary judgment as both sides solely raised pure issues of law. Accordingly, the County filed a cross-motion for summary judgment.

Following a hearing, the trial court entered final summary judgment in favor of Sunset. The court determined that Florida law—including the Florida Right to Farm Act (§ 832.14) and the Agricultural Lands and Practices Act (§ 163.3162)—expressly preempts local regulation of Sunset's present agricultural use of the land. However, the court declined to determine whether the more than 35 local regulations listed in the County's Counterclaim were preempted. With respect to the fines, the court determined that Sunset had complied with the Restoration Plan and the County had failed to comply with the Stipulation by refusing to inspect the

5

property. Consequently, the court declared that the County was not entitled to collect the $200 per day fine.

The County timely appealed.

## II. ANALYSIS

The parties filed cross motions for summary judgment below and agreed that the issues raised present pure issues of law. Our standard of review is de novo. See, e.g., Am. Auto. Ins. Co. v. FDH Infrastructure Servs., LLC, 364 So. 3d 1082, 1083 (Fla. 3d DCA 2023).

The County raises numerous arguments on appeal. The County's first argument is that the appeal is moot. The County's remaining arguments concern Sunset's 2017 development and Sunset's proposed future development of the subject property. We address these arguments in turn.

### a. Mootness

The parties do not dispute that the Property Appraiser classified a portion of the subject land as agricultural for the 2022 tax year and completely denied agricultural classification for the 2023 tax year. Because the property is no longer classified as agricultural, the County contends this appeal is moot. We disagree.

"An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect." Godwin v. State, 593 So. 2d 211, 212 (Fla. 1992). Here, there has not been full resolution of the controversy for at least two reasons. First, according to Sunset, it has

6

appealed the Appraiser's determination to no longer classify the property as agricultural, and this is pending before the trial court. In its challenge to the Appraiser's change in classification, Sunset argues that the decision to remove the agricultural classification is arbitrary and that Sunset is *entitled* to the agricultural classification pursuant to § 193.461, Florida Statutes (2024).[2] Because this remains unresolved in the trial court, we cannot say that the appeal is moot.

The second reason the change in classification does not fully resolve the issues on appeal is that this does not affect the legality of the daily $200 fine that was imposed after Sunset followed the Restoration Plan pursuant to the Stipulation. Accordingly, we reject the County's mootness argument.

## b. Sunset's 2017 Development

The County frames the "critical question for this Court to resolve" as "[w]hether Sunset's massive unpermitted land clearing of this environmentally sensitive Tier I parcel commencing in September 2017 constitutes 'development' . . . ." We note that the order on appeal does not

---

[2] Pursuant to § 193.461(3)(e), "land that has received an agricultural classification from the value adjustment board or a court of competent jurisdiction pursuant to this section is entitled to receive such classification in any subsequent year until such agricultural use of the land is abandoned or discontinued, the land is diverted to a nonagricultural use, or the land is reclassified as nonagricultural pursuant to subsection (4)." Subsection (4) requires the property appraiser to reclassify the following as nonagricultural: (a) Land diverted from an agricultural to a nonagricultural use and (b) Land no longer being utilized for agricultural purposes.

determine that the County could not regulate the development of the property in 2017. Indeed, the trial court correctly found that after Sunset received the Notice of Violation, it entered into a Stipulation in which it did not contest the violations.

We have no trouble concluding that the County was within its authority to prohibit Sunset from the land clearing that occurred in 2017 on environmentally sensitive land that was zoned as "residential vacant" at the time. Due to the property's environmental designation and the fact that it was not zoned for agricultural use, Sunset could not have been engaged in bona fide agricultural purposes[3] when it removed environmentally sensitive vegetation and began developing the land.

But our analysis does not stop here. As a result of Sunset's unpermitted land clearing, the parties entered into a Stipulation Agreement in which Sunset agreed to follow a Restoration and Replanting Plan prepared by the County Biologist. The Stipulation was expressly incorporated by the code compliance Magistrate's Final Order. It is undisputed that Sunset complied with the Restoration Plan, but when Sunset attempted to have the property inspected, the County refused and imposed a $200 per day fine. The County contends that it refused the inspection because Sunset was required to obtain a permit before replanting. But neither the Magistrate's

---

[3] "The term 'bona fide agricultural purposes' means good faith commercial agricultural use of the land." § 193.461(3)(b).

8

Final Order nor the Stipulation require Sunset to obtain a permit before replanting. Instead, the County relies on its own Notice of Violation, which the Magistrate's Final Order also incorporates.

We agree with the trial court that the express terms of the Stipulation, entered into after the Notice of Violation, control. The Notice of Violation required certain corrective action, including obtaining an after-the-fact permit for restoration, which itself required input from the County Biologist. The Notice further set a hearing date. Instead of proceeding to a public hearing, the parties entered into a Stipulation in which Sunset agreed to follow a comprehensive Restoration Plan prepared by the County Biologist. The purpose of the after-the-fact permit in the Notice of Violation was to ensure that the restoration complied with the dictates of the County Biologist. It is illogical that such a permit would be required when the Stipulation already required Sunset to follow a written, detailed Restoration Plan prepared by the Biologist.

Moreover, as the trial court correctly observed:

> [T]he Stipulated Agreement was entered into by the parties in lieu of proceeding to a contested hearing on the violation. The parties agreed to various terms in the Stipulated Agreement that were incorporated into the Final Order. The Stipulated Agreement does not contain a requirement that Sunset Gardens obtain a permit before re-planting, and therefore, this requirement cannot be read into the Final Order.

9

Accordingly, the County's argument that Sunset was required to obtain a permit fails. Because Sunset complied with the Stipulation, we affirm the trial court's determination that the County is not entitled to collect the $200 per day fine.

### c. Sunset's Proposed Development

We now turn to the County's arguments concerning Sunset's proposed development of the property and whether State law preempts local regulation of the property.[4] As this is an appeal from a declaratory judgment, we begin with the elements of declaratory relief.[5]

Our Supreme Court has explained that individuals seeking declaratory relief must show the following:

> [1] a bona fide, actual, present practical need for the declaration; . . . [2] a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; [3] that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; [4] that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; [5] that the antagonistic and adverse interest are all before the court by

---

[4] The County argues that Sunset is bound by the local regulations set forth in the Letter of Understanding. We disagree. The Letter, by its own terms, simply reviews local regulations that would *generally* apply and expressly *does not* determine whether the County's growth management laws are preempted by State law.

[5] "A declaratory judgment is a statutorily created remedy." Martinez v. Scanlan, 582 So. 2d 1167, 1170 (Fla. 1991); see also Chapter 86, Fla. Stat. (2024).

> proper process or class representation[;] and [6] that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

Martinez v. Scanlan, 582 So. 2d 1167, 1170 (Fla. 1991) (quoting May v. Holley, 59 So. 2d 636, 639 (Fla.1952)). "*These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.*" Id. "There is a line between an acceptable claim for declaratory judgment and an unacceptable request for a court to provide an 'advisory opinion.'" Guttenberg v. Smith & Wesson Corp., 357 So. 3d 690, 691–92 (Fla. 4th DCA 2023). In short, there "must exist some justiciable controversy between adverse parties that needs to be resolved for a court to exercise its jurisdiction." Martinez, 582 So. 2d at 1171.

Here, there is not a sufficient justiciable controversy to warrant declaratory relief.[6] As an initial matter, there has not been a final resolution of the subject property's zoning classification. As set forth above, the Property Appraiser removed Sunset's agricultural classification, and this dispute remains pending in the trial court.

---

[6] We note that the 2018 Notice of Violation *did* include a violation for beekeeping pursuant to section 110-140(a) of the Monroe County Code. However, this violation was dismissed pursuant to the parties' Settlement. We therefore do not decide whether local regulation of beekeeping is preempted by State law.

Moreover, the preemption issues before us are too abstract to be justiciable. In its request for a Letter of Understanding from the County, Sunset did not set forth specific development plans. Instead, it explained that it intended to use the property for "a variety of agricultural and agritourism uses, including beekeeping, growing pineapples and other nursery plants, raising goats for milk production, chickens for egg production, processing goat milk soap, operating a farm market, hosting farm tours, farm winery, and hosting weddings and other events." Similarly, the County has listed over 35 local regulations[7] that might be applicable to Sunset's proposed development plans. Such generalities involving potential development and potentially applicable local regulations are simply insufficient to create a justiciable controversy. See, e.g., Santa Rosa County v. Admin. Comm'n, Div. of Admin. Hearings, 661 So. 2d 1190, 1193 (Fla. 1995) ("Florida courts will not render, in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the *possibility* of legal injury on the basis of a hypothetical 'state of facts which have not arisen' and are only 'contingent, uncertain, [and] rest in

---

[7] These regulations cover a host of subjects, including permitting, building and fence height requirements, stormwater mitigation, parking, open space requirements, and maximum illumination. Until there is an actual controversy between the parties over the regulated subject matter, there is no jurisdiction to render declaratory relief. See, e.g., Aaronson v. White, 324 So. 3d 1024 (Fla. 3d DCA 2021).

the future.'" (quoting LaBella v. Food Fair, Inc., 406 So. 2d 1216, 1217 (Fla. 3d DCA 1981))).

Indeed, the trial court properly declined to determine whether the more than 35 local regulations were preempted by State law because this requires a "use-by-use, ordinance-by-ordinance analysis." As the court further explained:

> The County is not entitled to a broad, wholesale, declaratory finding that its land development regulations or even the numerous ordinances cited in its Counterclaim are not preempted to the State because Monroe County has not shown how the enumerated ordinances in its Counterclaim do not impact farming operations, generally, and specifically as to Sunset Gardens.

To the extent the order on appeal concludes that local regulation of Sunset's current agricultural uses is preempted, we are compelled to reverse because this implicates the same justiciability concerns. It remains uncertain whether the subject property is currently classified as agricultural. Moreover, the County has not issued any additional notices of violation or otherwise set forth the exact local regulations that apply to Sunset's current agricultural uses. Similarly, the trial court's Final Declaratory Judgment does not identify which local regulations are applicable to Sunset's current agricultural uses nor does the Judgment identify the local regulations that are preempted.

III. CONCLUSION

13

Accordingly, we reverse the Final Declaratory Judgment insofar as it determines that unspecified local regulations pertaining to Sunset's agricultural uses are preempted by State law. We affirm in all other respects, including the trial court's determination that the County is not entitled to collect the $200 per day fine.

Affirmed, in part; reversed, in part.